IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| AUGUSTINE PEREZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | Case No.    1:11-cv-00949-TMP |
| | ) | |
| JOHN T. RATHMAN, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the court on a petition for writ of *habeas corpus* filed on or about

March 14, 2011.  The petition is labeled as one brought pursuant to 28 U.S.C. § 2241, and challenges

the petitioner's 1991 conviction and sentence on drug trafficking violations.  Even though the claims

petitioner raises appear to more properly be claims attacking the circumstances surrounding the

conviction, which properly should be brought as a motion pursuant to 28 U.S.C. § 2255, the court

construes the instant petition as one brought pursuant to § 2241.[1]  The petitioner, Augustine Perez,

is incarcerated at the Federal Correction Institution in Talladega, Alabama.[2]  In accordance with the

---

[1]      The court's reasoning in construing the instant action as one brought pursuant to  28
U.S.C. § 2241 is discussed more fully *infra*.  At the outset, the court notes that, if the court construed
the instant matter as one filed pursuant to 28 U.S.C. § 2255, the action would necessarily be
transferred to the Western District of Virginia because venue is improper here.  That would be an
exercise in futility, because the motion would then clearly be due to be dismissed as successive,
absent permission from the Fourth Circuit Court of Appeals, which petitioner does not allege he has
received.  If he has sought and obtained the requisite permission and to file a second or successive
motion, he may do so in the proper court.

[2]      Because the Talladega Federal Correction Institute is located within the Northern
District of Alabama, this court is the proper venue for a petition filed pursuant to § 2241.

usual practices of this court, the motion has been referred to the undersigned magistrate judge for

preliminary review and recommendation.

## PROCEDURAL HISTORY

On March 14, 1991, the petitioner was convicted of conspiracy, possession of intent to

distribute cocaine, distributing cocaine, possession with intent to distribute cocaine on school

property, engaging in a continuing criminal enterprise, and possessing a firearm during a drug

transaction in the Western District of Virginia, at Roanoke.  The indictment against the petitioner

charged him as the conspiracy's alleged ringleader, who conspired to distribute cocaine from 1985

to 1989 in the Lynchburg, Virginia area.  Fifteen defendants were indicted, including the petitioner.

Eight defendants pleaded guilty (the majority of whom testified at trial) and seven defendants,

including the petitioner, pleaded not guilty and were tried together.  At trial, two of the government's

key witnesses, Gary Anderson and Anita Perez, testified against the petitioner.   Anderson testified

that petitioner  "gave him about one-half kilogram of cocaine to sell each week, and during the

course of the conspiracy, supplied him with eight to ten kilograms of cocaine."  United States v.

Hubbard, 4 F.3d 987, at *2 (4th Cir. 1993).  Anita Perez, the petitioner's estranged wife, testified that

she never actually saw petitioner sell cocaine, but that he "practically 'lived' in the master bedroom

at the house, smoking coke and counting money."  Hubbard, 4 F.3d 987, at *2.  She also testified that

petitioner "came to the elementary school where she worked as a janitor and asked her to go to the

front door while he stored something in the janitor's closet."  The Fourth Circuit found that other

witnesses corroborated the accounts of Perez and Anderson, and affirmed the conviction against the

petitioner.  One of those witnesses was a state trooper who arrested the petitioner for DUI in 1988

and found three ounces of cocaine on petitioner and a briefcase containing $15,716.00 in cash.  The state trooper testified that the petitioner "told him there was plenty more cash where that came from."  Id.  The government's evidence against the petitioner included computer disks containing detailed records of his cocaine transactions and government pen registers showing telephone calls between the petitioner and other alleged co-conspirators.  The evidence, as described by the Fourth Circuit, was "abundant" and it "established both a conspiracy and [the petitioner's] involvement in it."  Id.

In 1990, the money that was found in the petitioner's car from the 1988 DUI arrest became the subject of a forfeiture proceeding.  The petitioner argued that the seized money came from a loan, but the United States District Court for the Western District of Virginia was convinced by the testimony of several witnesses (a state trooper, task force officer, and FBI special agent) that the money was intended to be used to purchase cocaine.  Accordingly, the court held that the government established a substantial connection between the petitioner's drug trafficking activities and the seized money to subject it to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6).  The petitioner appealed and the Fourth Circuit affirmed the forfeiture order.  United States v. Perez, D.N. 95-2843 (4th Cir. 1996) (unpublished).  Since the filing of his initial appeal, the petitioner has filed numerous motions in an attempt to reclaim the forfeited money, including a Rule 60(b)(6) motion, a motion for reconsideration, and a motion to reopen judgments.  All of these motions have been denied and the Fourth Circuit has affirmed each of the orders denying the motions.  In September, 2008, the petitioner filed a "Motion to Void Judgment" alleging that the district court judge in the civil forfeiture proceeding conspired with an assistant U.S. Attorney in a "deliberate and insidious scheme to defraud" the petitioner of his money.  The motion to void was also denied.

On March 19, 1997, the petitioner filed a § 2255 motion in the United States District Court for the Western District of Virginia. The motion was denied, from which the petitioner appealed. The Fourth Circuit Court of Appeals denied permission to proceed *in forma pauperis,* denied a certificate of appealability, and dismissed the appeal. On August 3, 2005, the petitioner filed a second § 2255 motion that was dismissed without prejudice as successive on August 15, 2005, by the United States District Court for the Western District of Virginia. The Fourth Circuit Court of Appeals denied petitioner's motion to file a second or successive motion under 28 U.S.C. § 2255.

The petitioner is presently confined at the Federal Correctional Institution in Talladega, Alabama, and has filed the instant *habeas* petition pursuant to 28 U.S.C. § 2241. Pursuant to this court's order to show cause, the respondent, after seeking and receiving an extension of time to respond, filed a partial response and motion to dismiss the § 2241 petition. In those papers, the respondent asserts that the petition seeks to challenge a criminal conviction and is therefore a § 2255 petition, despite being labeled a § 2241 petition. Because the petition is actually a § 2255 petition, the respondent argues, it is successive and due to be dismissed without prejudice for refiling in the Western District of Virginia, once permission for leave to file is obtained from the Fourth Circuit Court of Appeals. Alternatively, the respondent submits that the petition is due to be dismissed as successive under Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999). The court will address both arguments in turn.

## DISCUSSION

As mentioned directly above, the first argument asserted in the respondent's papers urges dismissal of the instant petition without prejudice for re-filing in the Western District of Virginia,

assuming the petitioner gets permission to file a successive § 2255 motion from the Fourth Circuit Court of Appeals.  This argument posits that the instant petition, at its essence, concerns the petitioner's criminal conviction and is therefore a claim (or claims) that must be brought under § 2255.  Challenging the propriety of the petition as a § 2241 petition requires the court to make a threshold determination regarding the construction of the instant *habeas* petition.  The respondent argues that the petition is truly a § 2255 moiton that may be brought only in the district where the sentence occurred – in this case, the Western District of Virginia.  On the other hand, the petitioner has clearly labeled his petition as one for relief under § 2241 and he has filed in the district encompassing the place of his incarceration.  The fact that the petitioner has filed his prior § 2255 petitions in the appropriate venue, the Western District of Virginia, further evinces that he intended to file a §2241 petition here and that he understands the venue provisions associated with the different statutes.  Moreover, the petition expressly invokes the "savings clause" of § 2255, which allows (if certain requirements are met) federal convicts to attack their convictions through § 2241, instead of § 2255.

The court is mindful that the labels given or forms used by a movant are not conclusive. Even so, if movant's own label were ignored and the court were to construe the motion as one brought pursuant to § 2255, the motion would be a successive motion for which he has not received permission from the Fourth Circuit Court of Appeals.  Such successive motions, absent the express permission from the appellate court, are due to be dismissed.  Accordingly, construing the pleading liberally in favor of the *pro se* litigant, the court treats the instant petition the way it apparently was intended: as an application for relief pursuant to 28 U.S.C. § 2241.  In this regard, the court turns to the issue of whether the petition meets requirements necessary to gain access, through the savings

clause, to a platform where the petitioner's actual innocence claim can be evaluated.

The instant petition is prolific, and replete with allegations of judicial bias, prosecutorial misconduct, tainted proceedings, and fraud. The gist of the instant petition, however, concerns an allegation that the petitioner's sixth amendment rights were violated when the civil forfeiture proceeding (on the funds seized in the 1988 DUI arrest) was stayed pending his trial on the cocaine conspiracy. The petitioner argues that he was denied access to the seized funds, by operation of the stay, and therefore could not use that money to secure counsel of his choosing. In making this argument and, throughout his petition, it is clear that the petitioner understands the procedural posture of his case. He expressly invokes the savings provision of § 2255 and professes that "the Antiterrorism and Effective Death Penalty Act of 1996, (AEDPA), implemented some incredible restrictions on filing second or successive § 2255 petitions." Having already filed one § 2255 motion and having attempted to file a second petition (the Fourth Circuit Court of Appeals denied him permission to do so), it is true that the savings provision is the petitioner's only way to escape the prohibition against successive habeas petitions. The court does not find, however, that the instant case meets the requirements of the provision.

The petitioner contends that the "extent of the Savings Clause remains cloudy because of the judicial retrains [sic] on its real purpose or potential." The court disagrees, finding that the Eleventh Circuit has spoken with clarity regarding the applicability of the savings clause. As a general rule, a collateral attack on the validity of a federal conviction or sentence must be brought pursuant to 28 U.S.C. § 2255. See, e.g., Campbell v. Yates, 196 Fed. Appx. 744 (11th Cir. 2006). Under certain circumstances, however, § 2255 permits a prisoner to seek *habeas* relief pursuant to § 2241. The applicable "savings clause" of § 2255 provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*.

28 U.S.C. § 2255 (emphasis added).  Consequently, the relief available through § 2241 may be invoked only if petitioner establishes that the remedy provided through § 2255 is "inadequate or ineffective." The burden of showing that the remedy is inadequate or ineffective lies with petitioner and requires more than a showing that relief under § 2255 has previously been denied.  See McGhee v. Hanberry, 604 F.2d 9, 10 (5th Cir. 1979).[3]  The Eleventh Circuit Court of Appeals has held unambiguously that the savings clause applies only in certain circumstances where: "(1) [the petitioner's] claim is based upon a retroactively applicable Supreme Court decision; (2) the holding of that Supreme Court decision establishes the petitioner  was convicted for a nonexistent offense; and*,* (3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised at the petitioner's trial, appeal, or first § 2255 motion."  Wofford v. Scott, 177 F.3d at 1236,  1244 (11th Cir. 1999).

In the instant matter, the petitioner cites to the Supreme Court's decision in United States v. Gonzalez-Lopez, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d.  409 (2006), as legal authority justifying invocation of the savings provision and qualifying his petition under the Wofford standard. In Gonzalez-Lopez, the Supreme Court ruled that the criminal defendant was entitled to a reversal of his conviction because he was erroneously deprived of his right to counsel of choice under the

---

[3]      In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc*) the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

Sixth Amendment.  Indeed, the precise issue before the court was "whether a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to a reversal of his conviction." Gonzalez-Lopez, 548 U.S. at 142.  In deciding this issue, the court concluded that such a deprivation constitutes a structural error, not a harmless one, and therefore the defendant's conviction was reversed.  While the Gonzalez-Lopez corresponds, by topic, with a core argument asserted in the subject petition (deprivation of Sixth Amendment right to counsel of choice), it does not suffice to open the § 2241 door.   Under the Eleventh Circuit's construction of the savings provision, the petitioner must establish that his claim is based on a retroactively applicable decision establishing that the petitioner was convicted of a *non-existent offense* – Gonzalez-Lopez is not such a decision. Put simply, Gonzalez-Lopez does not nullify any crime for which the petitioner was convicted. Because the petitioner "was not convicted of any crime which a retroactively Supreme Court decision overturning prior circuit precedent has made clear is non-existent," the savings clause does not apply.

The court need not examine the additional prong of the test, that "circuit law squarely foreclosed such a claim at the time it otherwise should have been raised at the petitioner's trial, appeal, or first § 2255 motion", because it is clear that the petitioner cannot satisfy the first two prongs and he  must meet all three in order to proceed.  Potts v. Warden, 2006 WL 1843555 * 2 (11th Cir. July 6, 2006).  Further, the court need not examine petitioner's claims of actual innocence because the issue of actual innocence arises only after petitioner has "'open[ed] the portal' to a § 2241 proceeding by demonstrating that § 2255's savings clause applies to his claim[s]." Potts, 2006 WL 1843555 *2, quoting Wofford, 177 F.3d at 1244 n.3.  See also, Collazo v. United States, slip op. No. 05-14501, 2006 WL 1818582 * 1 (11th Cir. July 5, 2006)("A petitioner may not argue

the merits of his claim until he has 'opened the portal' to a § 2241 proceeding by demonstrating that

§ 2255's savings clause applies to his claim."). Here, the petitioner's claims fail to traverse the

narrow portal of the savings clause that would open a proceeding where an actual innocence inquiry

frames the analysis. In this regard, the court agrees with the respondent that the petition fails to meet

the Wofford standard for invoking the § 2255 savings clause, and dismisses the petitioner's claims

that attack the validity of his federal conviction.

***Sentence Adjustment/Credit for Time-Served Argument***

The lion's share of the instant petition is devoted to arguments described as "structural

issues" that concern the denial of the right to be heard, denial of the right to counsel of choice,

judicial bias, and failure to recuse. These are the claims that the court agrees are due to be dismissed

because they fail to meet the requirements for invoking the § 2255 savings clause. The petition does

include, however, an additional claim concerning an "18 month adjustment" to the petitioner's

sentence. Specifically, the petitioner contends that his time served prior to the imposition of his

federal sentence (from September 1989 to March 1991) requires that his sentence be adjusted. The

government's response does not address the petitioner's sentence adjustment argument and, perhaps,

that is why it is entitled a "partial response." The petitioner's argument regarding credit for time

spent prior to the imposition of his federal sentence, is not, in the court's estimation, part and parcel

of the "structural" claims that will be dismissed for failure to satisfy the savings clause provision.

Rather, the claim concerning prior time-served is a challenge to the execution of his sentence and

is properly brought under § 2241, irrespective of § 2255's savings clause.

It is well-settled in this circuit that prisoners seeking habeas relief, including relief pursuant

to § 2241, are subject to administrative exhaustion requirements.  Indeed, the Eleventh Circuit has

held that the "exhaustion of administrative remedies is jurisdictional" and that jurisdictional issues

must be addressed before the merits of a claim are considered.  Gonzalez v. U.S., 959 F.2d 211 (11th

Cir. 1992).  In the context of this case, exhaustion means that the petitioner must have first exhausted

his administrative remedies to adjust his sentence through the Bureau of Prisons.  As the court

explained by the Eleventh Circuit in Hicks v. Jordan:

> The Attorney General has the authority to determine what credit, if
> any, is due a prisoner for time served, and the Attorney General has
> delegated the right to make this determination to the BOP. *See
> Rodriguez v. Lamer,* 60 F.3d 745, 747 (11th Cir.1995); *United States
> v. Lucas,* 898 F.2d 1554, 1555-56 (11th Cir.1990) (per curiam). A
> prisoner seeking credit against his sentence for time in custody must
> exhaust BOP administrative remedies, or else the district court has no
> jurisdiction to hear his claims. *Lucas,* 898 F.2d at 1556. The BOP has
> established regulations governing formal review of inmate complaints
> relating to any aspect of imprisonment. *See id.;* 28 C.F.R. §§ 542.10-
> .19. These regulations "set out the procedures that prisoners must
> pursue prior to seeking relief in a district court." *Lucas,* 898 F.2d at
> 1556. The regulations include an appeals process that allows the
> BOP's General Counsel to make the ultimate decision. *See* 28 C.F.R.
> § 542.15(a).

165 Fed. Appx. 797, 798 (11th Cir. 2006).  Here, the petitioner has submitted evidence that the court

construes, in the absence of any objection from the government, as establishing that the petitioner

has exhausted the BOP administrative remedies necessary to making a *habeas* challenge to his

sentence calculation.[4]  This evidence includes paperwork from the warden of Talladega Federal

---

[4]Additionally, the court notes Eleventh Circuit's decision in Rodriguez v. Lamer, 60 F.3d 745
(11th Cir. 1995), where the court held:

It is unclear to us on this record whether Mr. Rodriguez has exhausted

Correctional Institution regarding "jail credit," as well as, copies of a regional administrative remedy appeal, and a central office administrative remedy appeal.  The documents that the petitioner has submitted progress in chronological order from February 23, 2010, until August 10, 2010, contain hallmarks of an official review process, and all concern the issue of prior custody credit from September 1989 until March 1991.  Thus, the court construes the petitioner's evidentiary submission as evincing that he exhausted the administrative review process for seeking sentence credit.  Because the court finds that the petitioner has exhausted the BOP administrative remedies as required, there is jurisdiction for the court to consider the merits of his claim regarding sentence computation and credit for prior custody.

It is well-settled that the BOP is "responsible for sentence computation and other administrative matters regarding the length of a prisoner's confinement." United States v. Wilson, 503 U.S. 329, 335 (1992).   Thus, district courts are not authorized to compute presentence credit at sentencing. Id. at 333–334.  Title 18 U.S.C. § 3585 governs calculation of a term of imprisonment and subsection (b) of that statute addresses credit for prior custody:

> (b)  A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

---

his administrative remedies, but as the United States has not raised an objection, we regard as waived any objection that the United States may have been able to raise on this ground.

Id. at 747, citing United States v. Woods, 888 F.2d 653, 654 (10th Cir.1989) (citations omitted), cert. denied, 494 U.S. 1006, 110 S. Ct. 1301, 108 L. Ed.2d 478 (1990).

(1) as a result of the offense for which sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

18 U.S.C. § 3585(b)  (emphasis added).  In this case, the August 10, 2010  response to the petitioner's Central Office Administrative Remedy request states that §3585(b) "precludes the application of the remainder of the time you are seeking for it was credited against you state sentence."  The response further recites:

> We received clarification from the federal Sentencing Court that its intent was to run the federal sentence concurrent to the state.  Your federal sentence was adjusted to commence on the date it was imposed, March 15, 1991, making the sentences concurrent.  Prior custody credit was applied for September 27, 1988, the date of your initial arrest and release on bond.  Credit was also applied from the date of your arrest on April 26, 1989, until the day you were released on April 27, 1989, as this time was not credited against your state sentence. Additionally, you received credit from September 13, 1989, in accordance with U.S. v. Willis.

As noted above, § 3585(b) authorizes credit only for time that "has not been credited against another sentence." 18 U.S.C.§ 3585(b).  In this case, the credit that the petitioner seeks has been applied already against his state sentence; accordingly, § 3585(b) precludes the relief sought here. Scruggs v. Adkinson, 423 F. App'x 858, 860 (11th Cir. 2011) ("Both this Court and the Supreme Court have recognized that Congress's 'actual purpose in altering [§ 3585's predecessor statute] was to make clear that a defendant could not receive a double credit for his detention time.'") (citations omitted). Given the express mandate of § 3585(b) as applicable only to time "that has not been credited against

another sentence," and the fact that the petitioner has not disputed the BOP's position that the time he seeks has already been credited against his state sentence, the court cannot indulge the petitioner's request for what appears to be "double credit."  Accordingly, it is recommended that the petitioner's § 2241 claim for sentence adjustment be denied.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing considerations, the magistrate judge RECOMMENDS that subject petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, be DENIED and DISMISSED WITH PREJUDICE.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

The Clerk is DIRECTED to mail a copy of the foregoing to the movant.

DONE this the 16th  day of November, 2012.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE